## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03012

BOHDAN PONOMARENKO AND YEKATERINA MIRONOVA,

    Plaintiffs,

v.

I.Q. DATA INTERNATIONAL, INC.

    Defendant.

## COMPLAINT

NOW COMES Plaintiffs, Bohdan Ponomarenko ("Bohdan") and Yekaterina Mironova ("Yekaterina") (collectively "Plaintiffs"), by and through their undersigned attorney, complaining of the Defendant, I.Q. Data International, Inc. ("I.Q. Data" or "Defendant") as follows:

## NATURE OF THE ACTION

1.  This action seeks actual, statutory, and punitive damages, costs and reasonable attorneys' fees for Defendant's willful and/or negligent violations of the Fair Credit Reporting Act ("FCRA"); 15 U.S.C. § 1681 et seq. and the Fair Debt Collection Practices Act ("FDCPA"); 15 U.S.C. § 1692 et seq.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a) as this action arises under the laws of the United States.

3.  Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## PARTIES

4.   Plaintiffs are natural persons over 18 years of age.

5.   I.Q. Data is a Washington corporation with its principal place of business in Bothell, Washington. I.Q. Data is a debt collector and furnisher of information to the major credit reporting agencies.

## FACTUAL ALLEGATIONS

6.   Plaintiffs previously entered into a 9-month residential apartment lease ("subject lease") with Residences at Falcon North ("RFN") in Colorado.

7.   Plaintiffs timely made each and every payment pursuant to the subject lease.

8.   In or about November 2019, the Lease expired and Plaintiffs moved out.

9.   In or around the first week of January, 2020, Yekaterina received a letter from IQ Data, dated December 30, 2019, demanding payment of $3,426.45 ("alleged debt") on behalf of RFN.

10. Subsequently, Bohdan noted that IQ Data was also reporting the alleged debt on his credit reports.

11. Bohdan and Yekaterina were perplexed by the demand for payment and the wrongful credit reporting since they had fully performed their lease obligations.

12. After receiving IQ Data's dunning letter, in or about the first week of January, 2020 Yekaterina called IQ Data and spoke to Jeremy Froelicher ("Jeremy"), a manager with IQ Data.

13. Yekaterina explained that there is no debt since all lease payments were timely made and there was no damage done to the apartment. Jeremy asked that proof is sent to IQ Data showing that there is no valid debt.

14. Subsequently, on January 7, 2020, Yekaterina and Bohdan sent a letter to IQ Data disputing the debt.  The letter also included supporting documentation evidencing that all timely payments against the subject lease were made and that no debt was owed.

15. IQ Data never responded to the above letter.

16. Having received no response to their letter, on January 27, 2020, Yekaterina, on behalf of herself and Bohdan, sent an email to IQ Data, which included further supporting documentation proving that the alleged debt is not valid.

17. Again, IQ Data did not respond to the above email so Yekaterina subsequently called IQ Data and, again, spoke to Jeremy.

18. This time, despite IQ Data's receipt of all the information proving the invalidity of the alleged debt, Jeremy informed Yekaterina that he can not close the file, but that only RFN can do so.

### I.Q. Data's Wrongful Credit Reporting

19. In or about January 2020, Bohdan obtained his credit reports.

20. Bohdan discovered that I.Q. Data was inaccurately reporting the alleged debt with a status of "Open," and Account type of "Collection Department/Agency/Attorney."

21. On January 7, 2020, Plaintiffs sent a dispute letter to Defendant.

22. Plaintiffs' dispute letter to Defendant included all relevant information.

23.  Defendant's reporting of the alleged debt as "Open," and with and account type of "Collection Department/Agency/Attorney" is inaccurate and misleading.  Instead, I.Q. Data should not be reporting on Bohdan's credit report as the alleged debt is not valid.

24. Accordingly, Bohdan continues to be harmed by the inaccurate reporting of the I.Q. Data account.

25.   Defendant's continued reporting of I.Q. Data account has decreased Bohdan's credit score and had prevented him from obtaining credit.

26. Plaintiffs continue to be harmed by Defendant's collection efforts.

27. This entire experience has imposed distrust, frustration, anxiety, and emotional distress on the part of the Plaintiffs.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681** *et seq.*
(BOHDAN PONOMARENKO)

28. Bohdan restates and re-alleges paragraphs 1 through 27 as though fully set forth herein.

29. Bohdan is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

30. I.Q. Data is a "person" as defined by 15 U.S.C. §1681a(b).

31. I.Q. Data is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

32. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

33.  I.Q. Data violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Bohdan.

34. I.Q. Data violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Bohdan's dispute to the credit bureaus.

35. I.Q. Data violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly delete the inaccurate information in Bohdan's credit files. Instead, I.Q. Data continued to report the inaccurate, incomplete, and misleading information in Bohdan's credit file after receiving Bohdan's detailed dispute.

36. I.Q. Data failed to conduct a reasonable reinvestigation of its reporting of the I.Q. Data trade line or delete the inaccurate reporting from Bohdan's credit files within 30 days of receiving notice of Bohdan's dispute under 15 U.S.C. §1681i(a)(1).

37. I.Q. Data violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Bohdan by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

38. Despite the blatantly obvious errors in Bohdan's credit files, and Bohdan's efforts to correct the errors, I.Q Data did not delete the erroneous account. Instead, I.Q. Data wrongfully re-reported, furnished, and re-furnished false, erroneous and misleading information, after Bohdan's dispute, to one or more third parties.

39. A reasonable investigation by I.Q. Data would have confirmed the veracity of Bohdan's dispute, yet the inaccurate information continues to be reported in Bohdan's credit file.

40. Had I.Q. Data taken steps to investigate Bohdan's valid dispute, the erroneous credit reporting of the I.Q. Data account might have been deleted. Bohdan provided all relevant information regarding his disputes in his requests for investigation.

41. By deviating from the standards established by the lending industry and the FCRA, I.Q. Data acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information.

**WHEREFORE**, Plaintiff, BOHDAN PONOMARENKO, respectfully prays this Honorable Court for the following relief:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  An order directing I.Q. Data to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d.  Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II

### VIOLATION(S) OF 15 U.S.C. § 1692 *et seq.*
(BOHDAN PONOMARENKO)

42.  Bohdan restates and re-alleges paragraphs 1 through 27 as though fully set forth herein.

43.  Bohdan is a "consumer" as defined by FDCPA § 1692a(3).

44.  The alleged debt is a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes. Specifically, the alleged debt stems from a residential apartment lease.

45.  I.Q. Data is a "debt collector" as defined by § 1692a(6) because its primary business is the collection of delinquent debts.

46.  Moreover, I.Q. Data is a "debt collector" because it acquired rights to the alleged debt after it was in default. 15 U.S.C. § 1692a(6).

47.  I.Q. Data communications were made in connection with the collection of the alleged debt.

48. I.Q. Data violated 15 U.S.C. §§1692e, e(2), e(8), and e(10) through its unlawful debt collection practices.

### a.  Violations of FDCPA §1692e

49.  I. Q. Data violated §1692e by using false, deceptive, and misleading means in connection with the collection of the alleged debt. Specifically, I.Q. Data reported false and inaccurate information to the credit reporting agencies in regards to the alleged debt. I.Q. Data falsely reported the alleged debt as "open" and with "collection" notations on Bohdan's credit report when Bohdan did not legally owe the alleged debt.

50. I.Q. Data violated §1692e(2) when it misleadingly represented the character, amount, and legal status of the alleged debt in an attempt to dragoon Bohdan into paying a debt not legally owed. Bohdan did not owe the alleged debt as it was paid timely and in full. Moreover, I.Q. Data received Bohdan's dispute letters with relevant documentation.

51. I.Q. Data violated §1692e(8) by threatening and communicating false and inaccurate information to the credit bureaus regarding the alleged debt in which it knew or should have known that the alleged debt was not owed by Bohdan. Despite receiving no less than two written disputes, I.Q. Data continued to report the inaccurate and false information in Bohdan's credit file.

52. I.Q. Data violated §1692e(10) by falsely and deceptively representing that Bohdan owed the alleged debt when it reported it on Bohdan's credit file with a status of "Open" and "Collection Department/Agency/Attorney." I.Q. Data was attempting to collect on a non-existent debt.

**WHEREFORE**, Plaintiff, BOHDAN PONOMARENKO respectfully prays this Honorable Court for the following relief:

> a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Order the immediate deletion of all adverse credit reporting to the subject medical debts;

c.  Award Plaintiff statutory damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.  Award any other relief as this Honorable Court deems just and equitable.

## COUNT III

### VIOLATION(S) OF 15 U.S.C. § 1692 *et seq.*
(YAKETERINA MIRONOVA)

53.  Yaketerina restates and re-alleges paragraphs 1 through 27 as though fully set forth herein.

54.  Yaketerina is a "consumer" as defined by FDCPA § 1692a(3).

55.  The alleged debt is a "debt" as defined by FDCPA § 1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes. Specifically, the alleged debt stems from a residential apartment lease.

56.  I.Q. Data is a "debt collector" as defined by § 1692a(6) because its primary business is the collection of delinquent debts.

57.  Moreover, I.Q. Data is a "debt collector" because it acquired rights to the alleged debt after it was in default. 15 U.S.C. § 1692a(6).

58.  I.Q. Data communications were made in connection with the collection of the alleged debt.

59.  I. Q. Data violated 15 U.S.C. §§1692e and f(1) through its unlawful debt collection practices.

**a.  Violations of FDCPA §1692e**

60.  I.Q. Data sent Yakaterina dunning letters falsely stating she owed a debt.

61.  Despite Yaketerina's dispute letters and phone calls to Defendant evidencing that there was no debt owed by her, Defendant continued with its collection efforts.

8

62.   I.Q. Data violated §1692e(2) when it misleadingly represented the character, amount, and legal status of the alleged debt in an attempt to dragoon Yekaterina into paying a debt not legally owed.  Yekaterina did not owe the alleged debt as it was paid timely and in full.

### b.   Violations of FDCPA §1692f(1)

63.   I.Q. Data violated §1692f(1) when is sought to collect on an amount that was not expressly authorized by any agreement or permitted by law.

64.   As highlighted above, Yekaterina timely made all payments against the subject lease and thus no debt was owed.

**WHEREFORE**, Plaintiff, YEKATERINA MIRONOVA, respectfully prays this Honorable Court for the following relief:

a.   Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.   Order the immediate deletion of all adverse credit reporting to the subject medical debts;

c.   Award Plaintiff statutory damages, in an amount to be determined at trial, for the underlying FDCPA violations;

d.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.   Award any other relief as this Honorable Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues

in this action so triable of right.


Dated: October 6, 2020                                    Respectfully submitted,

<u>*/s/ Majdi Y. Hijazin*</u>

Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com